IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WECO SUPPLY COMPANY, INC., a California corporation )<br><br>Plaintiff, )<br><br>v. )<br><br>THE SHERWIN-WILLIAMS COMPANY, )<br><br>Defendant. )<br>_____ )<br>AND RELATED CROSS-ACTION )<br>_____ ) | 1:10-CV-00171 AWI BAM<br><br>**ORDER ON SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 47, 70) |

## INTRODUCTION

This is a business dispute between Plaintiff Weco Supply Company, Inc. ("Weco") and Defendant The Sherwin-Williams Company ("Sherwin-Williams"). On May 25, 2012, the Court granted in part and denied in part Sherwin-Williams' Motions for Summary Judgment, or, in the alternative, Summary Adjudication of Issues. See Court's Docket, Doc. No. 66. However, the Court gave the parties leave to file a supplemental dispositive motion on the issue of whether summary judgment on the alleged breach of a contract's express terms automatically requires dismissal of a breach of contract claim premised on the implied covenant of good faith and fair dealing. On June 29, 2012, Sherwin Williams filed a Supplemental Memorandum of Points and Authorities in Support of Motions for Summary Judgment. See id., Doc. No. 70. Weco filed a

memorandum in opposition, and Sherwin-Williams filed a reply.  See id., Doc. Nos. 71, 72.  For the reasons set forth below, the Court will grant Sherwin-Williams' supplemental motion.

## BACKGROUND

The background of this action has been described in a prior order.  See id., Doc. No. 66. To sum up, Weco and Sherwin-Williams entered into a written agreement for the distribution of Sherwin-Williams paint products, referred to as a Direct Jobber Agreement (the "Jobber Agreement").  The First Amended Complaint ("FAC") alleges in part that Sherwin-Williams breached the Jobber Agreement by discontinuing a certain product line.  The FAC further alleges Sherwin-Williams breached the implied covenant of good faith and fair dealing by selling directly to two end users who were Weco's customers.  Sherwin-Williams filed a First Amended Cross-Complaint ("FACC") alleging, among other things, that Weco breached the Jobber Agreement by refusing to pay for an order of paint totaling $135,083.27.

With respect to Weco's breach of contract claims, the Court granted summary judgment on the FAC's Fifth Cause of Action for breach of contract, but denied summary judgment on the Sixth Cause of Action for breach of the implied covenant of good faith and fair dealing.  Id.  The Court also denied summary judgment on the FACC's First Cause of Action for breach of contract finding that there was a genuine factual dispute as to whether Sherwin-Williams breached the implied covenant of good faith and fair dealing.  Id.  The Court's findings were based upon an assumption that, under Ohio law, summary judgment on the claim for breach of the Jobber Agreement's express terms did not preclude Weco's claim for breach of the implied covenant of good faith and fair dealing.  The instant supplemental motion challenges that assumption and seeks reconsideration of the Court's denial of summary judgment on the FAC's Sixth Cause of Action and the FACC's First Cause of Action.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

2

1  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v.

2  Columbia Broadcast System, 368 U.S. 464, 467 (1962);  Southern California Gas Co. v. City of

3  Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).  A fact is material if it could affect the outcome of

4  the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

5  (1986); Miller, 454 F.3d at 987.

6       If the moving party meets its initial responsibility, the burden then shifts to the opposing

7  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

8  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities

9  Serv. Co., 391 U.S. 253, 288-89 (1968); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies,

10  Inc.,210 F.3d 1099, 1103 (9th Cir. 2000).   In attempting to establish the existence of this factual

11  dispute, the opposing party is required to tender evidence of specific facts in the form of

12  affidavits, and/or admissible discovery material, in support of its contention that the dispute

13  exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Miller,

14  454 F.3d at 987.

15       In the endeavor to establish the existence of a factual dispute, the opposing party need not

16  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

17  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

18  trial."  First Nat'l Bank, 391 U.S. at 290;  Giles v. General Motors Acceptance Corp., 494 F.3d

19  865, 872 (9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings

20  and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475

21  U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments);

22  International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

23       In resolving the summary judgment motion, the Court examines the pleadings,

24  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

25  any.  Rule 56(c); Poller, 368 U.S. at 468; Price v. Sery, 513 F.3d 962, 965 n.1 (9th Cir. 2008);

26  Lockett v. Catalina Channel Exp., Inc., 496 F.3d 1061, 1064 (9th Cir. 2007).  "[I]n ruling on a

27

28                                         3

motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999) (quoting <u>Anderson</u>, 477 U.S. at 255); <u>Miller</u>, 454 F.3d at 987; <u>Stegall v. Citadel Broad, Inc.</u>, 350 F.3d 1061, 1065 (9th Cir. 2003).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

## DISCUSSION

### A.    Breach of Implied Covenant of Good Faith and Fair Dealing

Sherwin-Williams contends it is well-settled law in Ohio that a claim for breach of the implied covenant of good faith and fair dealing must be anchored to a breach of contract claim and cannot stand alone.  In support of this, Sherwin-Williams cites <u>Dawson v. Blockbuster, Inc.</u>, in which the Ohio Court of Appeals dismissed the plaintiff's claim for breach of the implied covenant of good faith and fair dealing because the complaint failed to allege a breach of contract.  <u>See</u> No. 86541, 2006 WL 1061769, at *5 (Ohio Ct. App. Mar. 16, 2006).  The Court of Appeals observed:

> Parties to a contract are bound toward one another by standards of good faith and fair dealing. However, this does not stand for the proposition that breach of good faith exists as a separate claim. Instead, good faith is part of a contract claim and does not stand alone.

<u>Id.</u> (citing <u>Wauseon Plaza, Ltd. Partnership v. Wauseon Hardware Co.</u>, 156 Ohio App.3d 575, 807 N.E.2d 953 (Ohio Ct. App. 2004)).  For example, in <u>Wauseon</u>, the Court of Appeals held that a commercial landlord could not be liable for breaching the implied covenant of good faith and fair dealing by failing to maintain the anchor stores or foot traffic in a shopping center where the lease imposed no such obligation.  <u>See</u> 156 Ohio App.3d at 587, 807 N.E.2d at 962.

Weco's claim for breach of the implied covenant of good faith and fair dealing is based

4

1   on its allegation that Sherwin-Williams breached an implied duty not to sell directly to end users,

2   except in its retail stores.  Weco contends that although the Jobber Agreement expressly provides

3   that Sherwin-Williams "may sell Products directly to any Jobber and/or to any End User in any

4   geographical area including the same geographical area that is serviced by Jobber," the contract

5   as a whole indicated that Sherwin-Williams could sell to end users only at its stores.  There is no

6   express contract term limiting Sherwin-Williams' direct sales to in-store sales.  Rather, Weco

7   argues that other terms of the contract[1] suggest that the parties intended for Weco to have a direct

8   relationship with end users and for Sherwin-Williams to provide support to Weco, rather than

9   compete with it.  The Ohio Court of Appeals rejected a similar argument in Wauseon.  In that

10  case, the plaintiff argued a term of the lease that provided the tenant with relief if its business

11  suffered due to the closing of an anchor store also created a duty on the part of the landlord to

12  retain and replace anchor tenants.  Wauseon, 156 Ohio App.3d at 586, 807 N.E.2d at 961.  The

13  Court of Appeals held that the provision did not create an affirmative obligation to maintain

14  anchor stores, and noted that if such an obligation had been intended it could have been added to

15  the language of the contract.  Id.  Here, the Court finds that the Jobber Agreement provisions

16  cited by Weco do not create an obligation to restrict Sherwin-Williams' sales to end users to in-

17  store sales.  "When the terms included in an existing contract are clear and unambiguous, we

18  cannot create a new contract by finding an intent not expressed in the clear and unambiguous

19  _____

20      [1] Specifically, Weco points to the following sections of the Jobber Agreement:

21      Paragraph 1b: "The appointment of Jobber as a distributor of
        the Products is for the purpose of distribution of the Products by Jobber
22      to commercial customers for consumption and/or end use by such
        customers ("End Users").

23
        Paragraph 2c: "Jobber shall exercise its best efforts to market
24      the Products to End Users and to promote the goodwill and market
        reputation of SW and the Products."

25
        Paragraph 3b provides: "SW's sales and technical representatives will
26      assist Jobber, on a non-exclusive basis, relating to the sales of Products
        to End Users in Jobber's geographical vicinity."

27

28                                              5

language of the written contract." <u>Hamilton Ins. Servs. v. Nationwide Ins. Cos.</u>, 86 Ohio St. 3d

270, 273, 714 N.E.2d 898, 901 (Ohio 1999).  Thus, even if Weco were to plead its breach of the

implied covenant claim as a breach of contract claim, it would fail.

   As stated in the Court's prior order, the Ohio Court of Appeals held in <u>Littlejohn v.

Parrish</u> that "a party can be found to have breached its contract if it fails to act in good faith."

163 Ohio App. 3d 456, 463, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005).  However, further review

of Ohio law makes clear that, "outside of the context of insurance contracts, 'the breach of the

duty of good faith does not exist as a separate cause of action from a breach of contract claim.'"

<u>See</u> <u>Ireton v. RTD Realty</u>, 162 Ohio Misc. 2d 1, 22, 944 N.E.2d 1238, 1255 (Ohio Com. Pl.

2010) (quoting <u>Walton v. Residential Fin. Corp.</u>, 151 Ohio Misc 2d 28, 2009-Ohio-1872, 905

N.E.2d 1307, ¶ 10 (Ohio Com. Pl. 2009)).  In other words, a claim for breach of the implied

covenant of good faith and fair dealing must be based on a specific contractual obligation.  Here,

there is no contractual requirement that prohibits Sherwin-Williams from selling directly to any

of Weco customers.  On the contrary, there is a specific provision permitting Sherwin-Williams

to do precisely that.  Thus, the Court will reconsider its prior order and will grant summary

judgment in favor of Sherwin-Williams as to the FAC's Sixth Cause of Action.

   **B.**  **First Amended Cross-Complaint**

   The FACC's First Cause of Action for breach of contract is based on two theories.  First,

Sherwin-Williams contends, and Weco does not dispute, that Weco refused to pay for an order of

paint totaling $135,083.27.  Second, Sherwin-Williams alleges Weco breached the Jobber

Agreement by failing to use "best efforts" to market Sherwin-Williams' products.  Sherwin-

Williams states it will "forego the claim for the best efforts breach" if the Court grants summary

judgment on the contract claim for $135,083.27.  <u>See</u> Court's Docket, Doc. No. 72 at 8.  In its

prior order, the Court denied summary judgment finding that there was a genuine factual dispute

as to whether Sherwin-Williams breached the implied covenant of good faith and fair dealing.

Because the Court now finds that Ohio law precludes Weco's claim for breach of the implied

covenant, there is no factual dispute or defense to Sherwin-Williams' allegation that Weco ordered $135,083.27 worth of paint and has refused to pay for it.  Thus, the Court will reconsider its prior order and grant summary judgment in favor of Sherwin-Williams as to the FACC's First Cause of Action for breach of contract based on Weco's refusal to pay.[2]

Sherwin-Williams acknowledges that it makes no argument in support of the two remaining claims in the FACC for misappropriation of trade secrets and unfair competition.  In its supplemental briefing, Sherwin-Williams states it "is prepared to dismiss those claims, *if* summary judgment is entered in its favor on its breach of contract and common count claims for recovery of monies in the amount Weco concededly owes, $135,083.27, which would bring this action to a close."  See Court's Docket, Doc. No. 70 at n.3.  Accordingly, the Court leaves it to Sherwin-Williams to dismiss its remaining counterclaims based on this order.

## CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.     Summary judgment on the First Amended Complaint's Sixth Cause of Action for breach of the implied contract of good faith and fair dealing is GRANTED in favor of Sherwin-Williams;

2.     Summary judgment on the First Amended Cross-Complaint's First Cause of Action is GRANTED in favor of Sherwin-Williams;

3.     Sherwin-Williams shall file proof of its damages, fees, costs, and interest at the legal rate under Ohio law, along with a proposed order within twenty (20) days of service of this order.  Weco shall file its objections, if any, within ten (10) days of service of Sherwin-Williams' proposed order.  The Court will thereafter enter a

---

[2] As noted in the Court's prior order, the FACC also asserts counterclaims for "Goods Sold and Delivered" and "Account Stated."  These claims are based on the same facts and seek the same damages as the breach of contract counterclaim.  Accordingly, the Court finds that these counterclaims are subsumed within the breach of contract counterclaim.

final award of damages in favor of Sherwin-Williams;

4.      The pretrial conference and trial dates are hereby VACATED.

IT IS SO ORDERED.

Dated:    August 6, 2012                                  

CHIEF UNITED STATES DISTRICT JUDGE

8