IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WECO SUPPLY COMPANY, INC., a California corporation<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>THE SHERWIN-WILLIAMS COMPANY,<br><br>　　　　　　Defendant.<br><br>AND RELATED CROSS-ACTION | 1:10-CV-00171 AWI BAM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY FEES<br><br>(Doc. 74)<br><br>JUDGMENT AND COSTS |

　　On December 22, 2009, Plaintiff Weco Supply Company, Inc. ("Weco"), initiated the instant action against Defendant The Sherwin-Williams Company ("Sherwin-Williams") for claims related to a business dispute, including a claim for misappropriation of trade secrets. On May 25, 2012, the Court granted summary judgment in favor of Sherwin-Williams on the misappropriation of trade secrets claim. *See* Court's Docket, Doc. No. 73. Sherwin-Williams now moves for attorney's fees and costs, including expert fees, for the trade secrets claim pursuant to California Civil Code § 3426.4. For the reasons stated herein, the motion is denied. The Court will enter judgment in favor of Sherwin-Williams and will award costs of suit as detailed below.

# BACKGROUND

The background of this action has been described in the Court's prior orders. *Id.* at Doc. Nos. 66, 73. In sum, the parties' dispute centered around a written agreement for the distribution of Sherwin-Williams paint products by Weco (the "Jobber Agreement"). Weco alleged that Sherwin-Williams breached the Jobber Agreement by discontinuing a certain product line and by selling directly to two end users who were Weco's customers. In addition to the breach of contract claims, Weco also asserted claims for unfair competition, unfair trade practices, and misappropriation of trade secrets in violation of California law. Sherwin-Williams filed a cross-complaint alleging, among other things, that Weco breached the Jobber Agreement by refusing to pay for an order of paint totaling $135,083.27.

The parties filed cross-motions for summary judgment. In two orders dated May 25, 2012, and August 7, 2012, the Court granted summary judgment in favor of Sherwin-Williams as to all causes of action in Weco's First Amended Complaint, and on the breach of contract claim in Sherwin-Williams' First Amended Cross-Complaint. *Id.* at Doc, Nos. 66, 73. The Court ordered Sherwin-Williams to file proof of its damages, fees, costs, and interest at the legal rate under Ohio law. *See id.* at Doc. No. 73 ¶ 3. On August 27, 2012, Sherwin-Williams filed the instant motion for attorney's fees and costs, along with the required proof. *Id.* at Doc. No. 74. Weco opposes the motion and objects to Sherwin-Williams' bill of costs. *Id.* at Doc. Nos. 77, 77-3. Sherwin-Williams filed a reply and a response to Weco's objections. *Id.* at 78, 79.

# LEGAL STANDARDS

*A.   Attorney's Fees*

California Civil Code § 3426.4 provides:

> If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees and costs to the prevailing party. Recoverable costs hereunder shall include a reasonable sum to cover the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the prevailing party.

2

Because there is no statutory definition of "bad faith" in the context of trade secret misappropriation, California courts have developed a two-pronged standard for the evaluation of such claims. The party seeking an award of attorney's fees and expert fees under section 3426.4 must show (1) the objective speciousness of the opposing party's claim, and (2) the subjective bad faith of the opposing party in bringing or maintaining the action, that is, an improper purpose. *Gemini Aluminium Corp. v. California Custom Shapes, Inc.,* 95 Cal.App.4th 1249, 1261, 116 Cal.Rptr.2d 358 (2002). "Objective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." *FLIR Systems, Inc. v. Parrish,* 174 Cal.App.4th 1270, 1276, 95 Cal.Rptr.3d 307 (2009).  Objective speciousness may be shown by, among other factors, demonstrating that there was no misappropriation or threatened misappropriation or that the opposing party could not have suffered any economic harm. *Id.*  As for the second prong:

> Subjective bad faith may be inferred by evidence that [a party bringing an action for trade secret infringement] intended to cause unnecessary delay, filed the action to harass [the opposing party], or harbored improper motive. [....] The timing of the action may raise an inference of bad faith. [....] Similar inferences may be made where the plaintiff proceeds to trial after the actions's fatal shortcomings are revealed by opposing counsel.

*Id.* at 1278, 95 Cal.Rptr.3d 307 (internal citations omitted).

    *B.*    *Costs*

Federal Rule of Civil Procedure 54(d)(1) provides, in pertinent part, that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "By its terms, the rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican Am. Educators v. California,* 231 F.3d 572, 591 (9th Cir. 2000) (citing *National Info. Servs., Inc. v. TRW, Inc.,* 51 F.3d 1470, 1471 (9th Cir. 1995)).  The court's discretion is not unlimited; it must "specify reasons" for denying costs. *Id.* at 591-92 (citing *Subscription Television, Inc. v. Southern Cal. Theater Owners Ass'n,* 576 F.2d 230, 234 (9th Cir.1978)).  "Proper grounds for denying costs

3

include (1) a losing party's limited financial resources; (2) misconduct by the prevailing party; and (3) the chilling effect of imposing ... high costs on future civil rights litigants, as well as (4) whether the issues in the case were close and difficult; (5) whether the prevailing party's recovery was nominal or partial; (6) whether the losing party litigated in good faith; and (7) whether the case presented a landmark issue of national importance." *Quan v. Computer Sciences Corp.,* 623 F.3d 870, 888 (9th Cir. 2010) (quoting *Champion Produce, Inc. v. Ruby Robinson Co.,* 342 F.3d 1016, 1022 (9th Cir. 2003) (omission in original) (internal quotation marks omitted)).

Rule 54(d) does not authorize a court to award costs beyond those authorized by statute or contract. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-45, 107 S. Ct. 2494, 96 L.Ed.2d 385 (1987). In this District, "[c]osts shall be taxed in conformity with the provisions of 28 U.S.C. § 1920, and such other provisions of law as may be applicable." L.R. 292(a).

## DISCUSSION

*A.     Attorney's Fees*

Sherwin-Williams contends it is entitled to attorney's fees and expert fees because Weco brought the trade secret claim against it in bad faith. Sherwin-Williams points out that the Court granted Sherwin-Williams' motion for summary judgment on the trade secret claim due to lack of evidence. Sherwin-Williams further argues that the evidence submitted in support of its motion demonstrates that Weco filed and maintained the action due to personal hostility of its principal John Sorensen toward Sherwin-Williams. Weco disputes this, arguing that the deposition testimony cited by Sherwin-Williams merely shows that Mr. Sorensen decided not to buy more paint from Sherwin-Williams because he was "mad at them," and that he intended to sue Sherwin-Williams. *See* Decl. of Joseph Owens, Ex. A, 188:4-14. Weco argues this testimony does not demonstrate that it initiated or maintained the trade secrets claim in bad faith.

The first prong of the test for bad faith under California Civil Code § 3426.4, objective speciousness, requires a showing of a complete lack of evidence to support the trade secrets claim. To prove a claim for misappropriation of trade secrets under California's Uniform Trade

4

Secrets Act, a plaintiff must first show "the existence of subject matter which is capable of protection as a trade secret." *Globespan, Inc. v. O'Neill*, 151 F.Supp.2d 1229, 1235 (C.D. Cal. 2001) (quoting *Cal Francisco Corp. v. Vrionis*, 14 Cal.App.3d 318, 321-22, 92 Cal.Rptr. 201 (Cal. App. 1971)).  A trade secret must be either not generally known to the public or to competitors, or, if the information is disclosed to others, they must be obligated to keep that information confidential.  *See In re Providian Credit Card Cases*, 96 Cal. App.4th 292, 304 (Cal. App. 2002).  In its order on the motion for summary judgment, the Court found that "[t]he undisputed facts show that Weco's pricing to end users and costs of acquisition were not trade secrets within the meaning of the Uniform Trade Secrets Act."  Court's Docket, Doc. No. 66 at 13.  Thus, there was no misappropriation.  Accordingly, the objective speciousness prong of the test for bad faith appears to be met in this case.

Under California Civil Code § 3426.4, however, bad faith means more than the simple inability to prove the necessary elements of a cause of action.  The second prong of the test requires a showing of subjective bad faith.  Sherwin-Williams cites several portions of John Sorensen's deposition testimony suggesting that Mr. Sorensen became angry after Sherwin-Williams began selling paint directly to Mastercraft and Color Glow, two of Weco's customers. *See* Owens Decl., Ex. A at 155:16-22.  Mr. Sorensen refused to pay Sherwin-Williams for a large paint order because he "was mad at them."  *Id.* at 188:4-14.  Mr. Sorensen also testified that he hadn't paid $60,000 or $70,000 that he got from Mastercraft back to Sherwin-Williams because he "was going to use that money to sue [Sherwin-Williams] with."  *Id.* at 197:8-11.  Mr. Sorensen's testimony further reveals that he "was trying to hurt [Sherwin-Williams]" by sending a letter to other end users informing them of the pricing offered by Sherwin-Williams to their competitors.  *Id.* at 243:18-19.  While this deposition testimony plainly demonstrates there was no love lost between Mr. Sorensen and Sherwin-Williams, it does not support a finding that Weco brought the trade secrets claim in bad faith.  Civil litigation is frequently engendered by animosity.  This is not the same as bad faith.  The Court finds that even if Sherwin-Williams has

5

proved that Weco's trade secrets claim was objectively specious, there is no evidence that the claim was raised to "cause unnecessary delay," "to harass," or due to "improper motive." *See FLIR Systems, Inc.,* 174 Cal.App.4th at 1278, 95 Cal.Rptr.3d 307. Accordingly, Sherwin-Williams' motion for attorneys' fees and expert fees pursuant to California Civil Code § 3426.4 is denied.

### B. Costs

As the prevailing party, Sherwin-Williams seeks costs in the amount of $7,907.07. Weco objects to the Bill of Costs on the grounds that $3,707.80 sought by Sherwin-Williams for deposition transcripts, $1,252.00 for a videotaped deposition, and $2,152.27 in copying costs are either not allowed by statute, were not "necessarily obtained," or are unreasonable.

#### 1. Deposition Transcript Costs

Title 28 U.S.C. § 1920(2) provides that "[f]ees for printed or electronically recorded transcripts *necessarily obtained for use in the case*" are taxable costs. 28 U.S.C. § 1920(2) (emphasis added). Sherwin-Williams seeks costs for the printed deposition transcripts of John Sorensen, Larry Barcellos, Matt Barcellos, and Barry Desai. Mr. Sorensen is the owner of Weco. Larry Barcellos, Matt Barcellos, and Barry Desai are the principals of the two automotive body shops at issue in this case. Weco contends that in order to recover the costs of these transcripts, Sherwin-Williams must show that the costs incurred were reasonably necessary and the depositions were not merely investigative in nature. This is incorrect. The strong presumption in favor of awarding costs enumerated in 28 U.S.C. § 1920 effectively places the burden on the losing party to establish proper grounds for denying statutorily authorized costs. *See National Information Servs. v. TRW, Inc.*, 51 F.3d 1470, 1472 (9th Cir. 1995), *overruled in part on other grounds*, 231 F.3d 572 (9th Cir. 2000)). The deposition transcripts at issue could reasonably have been expected to be used for trial preparation, and thus were necessarily obtained for use in the case. Indeed, both parties cited to those transcripts in the cross motions for summary judgment. Thus, Weco's objections as to these deposition transcripts are overruled and Sherwin-

6

Williams shall be awarded the costs.

Weco further objects that Sherwin-Williams cannot recover the costs for the original and certified copies of the deposition transcripts. This objection is also overruled. The court reporter's invoices show that the charges were calculated for the cost of an original transcript, and the certified copies were considered complimentary. *See* Decl. of Rosemary Roper, Court's Docket, Doc. No. 78-1. Accordingly, Sherwin-Williams is entitled to recover the amounts requested in the bill of costs for the printed copies of each deposition transcript.

2.  Videotaped Deposition Costs

Sherwin-Williams also seeks costs for the videotaped deposition of John Sorensen. Weco objects that Sherwin-Williams cannot recover the costs for both the printed deposition transcript and the videotape services, as such costs are duplicative. Title 28 U.S.C. § 1920(2) provides that "[f]ees for printed *or* electronically recorded transcripts" are taxable costs if they are "necessarily obtained for use in the case." 28 U.S.C. § 1920(2) (emphasis added). The cost of only one method of recording the deposition is allowable. Federal Rule of Civil Procedure 30 authorizes videotaped depositions as an alternative to traditional stenographic depositions. *See* Fed. R. Civ. P. 30(b)(3)(A)-(B). Thus, in the present case, Sherwin-Williams is statutorily authorized to recover the cost of an original transcript or the cost of a videotape, but not the cost of both a printed transcript and videotape services.

While actual use of the videotaped deposition is not required to recover costs, the prevailing party must demonstrate that a videotaped copy of the deposition was necessary. *See Cargill v. Progressive Dairy Solutions, Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 5135826, *5 (E.D.Cal., Dec. 8, 2008). For example, if there is an indication that the deponent will be unable to testify at trial, a videotaped deposition may be necessary. *Id.* In this case, Sherwin-Williams argues the videotaped deposition "more clearly shows Sorensen's personality and spitefulness" and it intended to use the videotape at trial "so that the jury would be able to perceive his true motive." *See* Court's Docket, Doc. No. 78 at 4. In support of its motion for

7

attorney's fees Sherwin-Williams quotes extensively from Mr. Sorensen's deposition transcript. Based on the coarse language and candid expressions of anger in the transcript, the Court finds it unlikely that a jury would have needed assistance in the form of a videotape to perceive Mr. Sorensen's "personality and spitefulness." Moreover, there is no indication that Mr. Sorensen would have been unavailable to testify at trial.

Accordingly, the costs of videotaping Mr. Sorensen's deposition will not be taxed to Weco. Sherwin-Williams submitted an invoice in the amount of $1,252.00 for videotaping services for the deposition of John Sorensen. The bill of costs shall be reduced by that amount.

     3.  Copying Costs

Sherwin-Williams seeks copying costs in the amount of $2,152.27. Weco objects to this amount as "unreasonable," arguing that the records submitted by Sherwin-Williams do not specify the number of copies made, the nature of the documents copied, or why they were "necessarily obtained." Weco contends Sherwin-Williams may not recover copying costs for copies made for the convenience, preparation, research, or records of counsel.

Under 28 U.S.C. § 1920(4), "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are taxable as costs. 28 U.S.C. § 1920(4). Similarly, under Local Rule 292(f)(5), "[f]ees for exemplification and copies of papers necessarily obtained for use in the action" are taxable costs. The Ninth Circuit has held that 28 U.S.C. § 1920(4) does not specifically require that the copied document be introduced into the record to be an allowable cost. *See Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Cream, Inc.*, 920 F.3d 587, 588 (9th Cir. 1990).

Sherwin-Williams argues that the disbursement diary submitted specifies the number of copies made for each job, the rate per page or per job, as well as the dates of each copying charge. Sherwin-Williams also notes that the majority of such duplication costs were limited to 10 cents per page. The Court finds this is a reasonable cost per page. *See, e.g., Padula v.*

*Morris*, No. 2:05-cv-00411-MCE-EFB, 2012 WL 525575, at *4 (E.D. Cal., Feb. 16, 2012) (taxing costs at 20 cents per page). The Court finds that Sherwin-Williams has submitted sufficient documentation to support an award of copying costs, and the burden is on Weco to show why such costs should not be awarded. Both parties submitted voluminous cross motions for summary judgment. In light of this, the copying costs submitted do not appear unreasonable, and Weco has failed to demonstrate otherwise. Accordingly, the Court will credit Sherwin-Williams' assertion that the copying costs were "necessarily obtained for use in the case," and will award the amount requested in the bill of costs.

## CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for attorney's fees is DENIED;

2. Judgment shall be entered in favor of The Sherwin-Williams Company and against Weco Supply Company, Inc., as follows:

   A. The Sherwin Williams Company shall be awarded costs of suit herein in the amount of $6,655.07,

   B. The Sherwin Williams Company shall be awarded $135,083.27 in damages pursuant to its First Amended Cross-Complaint, plus pre-judgment interest commencing from March 20, 2007, at an annual rate established by Ohio law of 4% in the amount of $29,094.86.

IT IS SO ORDERED.

Dated:   January 2, 2013

_____
UNITED STATES DISTRICT JUDGE

9